# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| STONE RESOURCES, INC. a/k/a NATURAL STONE CARE a/k/a MARBLELIFE OF DELAWARE VALLEY, | : : : |
| DEBTOR. | : BANKRUPTCY NO. 11-11124-MDC |

## MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

This Memorandum Opinion is consistent with this Court's March 2, 2011 bench ruling and is submitted pursuant to Local Rule 8001-1(b)[1] to further expound upon the reasons for the ruling. The discussion below also constitutes this Court's findings of facts and conclusions of law as required by F.R.C.P. 52 made applicable to this matter by Fed. R. Bankr. P. 7052.

### FACTUAL AND PROCEDURAL BACKGROUND

The present dispute between the parties arises from a franchise agreement between Stone Resources, Inc. (the "Debtor") and MarbleLife, Inc. (the "Movant") dated April 3, 2000 (the "Franchise Agreement").[2] The Debtor is a stone, marble, granite, terrazzo restoration and maintenance company. In addition, the Debtor grinds and polishes concrete. The Franchise Agreement granted the Debtor certain rights including, *inter alia*, the right to operate as a "MarbleLife" franchise and a license to use the Movant's trademarks. In exchange, the Debtor agreed to pay the Movant a royalty calculated according to the Debtor's gross income. The Franchise Agreement also contains a covenant not to compete that prohibits the Debtor from competing with the Movant or its affiliates for a period of two years after the

---

[1] Local Rule 8001-1(b) provides: "Opinion in Support of Order. The bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion. L.B.R. 8001-1(b)."
[2] The Court has jurisdiction over this core proceeding under *28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(2)(G)*.

termination of the Franchise Agreement.

The Franchise Agreement expired pursuant to its own terms on April 3, 2010 (the "Expiration Date"). Shortly after the Expiration Date, the Debtor issued an arbitration demand against the Movant in Texas alleging claims for breach of contract, fraud, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act (the "Arbitration Demand"). Significantly, the Arbitration Demand sought to void the Franchise Agreement. The arbitration proceeding was scheduled to begin on April 21, 2011. However, the arbitrator has stayed the proceedings as a result of the Debtor's filing for chapter 11 relief.

To enforce the non-compete provisions of the Franchise Agreement, the Movant filed on May 21, 2010, a complaint in the Eastern District of Pennsylvania, Civ. No. 10-2480, seeking injunctive relief against the Debtor (the "District Court Litigation") and alleging that the Debtor continued to use the Movant's intellectual property in direct competition with the Movant and its affiliates. On December 23, 2010, following a hearing on the Movant's request, the District Court issued a preliminary injunction requiring the Debtor to cease its business operations and turnover certain business assets to the Movant (the "Preliminary Injunction"). The Debtor subsequently filed a motion for reconsideration as well as requested the District Court to set a bond for the preliminary injunction.

By an order dated February 11, 2011, the District Court denied the Debtor's motion for reconsideration (the "Reconsideration Order"). Significant to this Court's consideration of the issues now before it, the District Court clarified the scope of the Preliminary Injunction. In addition to amending certain portions of the Preliminary Injunction, the District Court stated:

> "The Court's grant of preliminary injunction did not make a final enforceable ruling with regards to the parties [sic] rights or obligations under the [Franchise Agreement]. This Court is well aware that there is a pending arbitration proceeding in Texas which will decide the substantive rights of both parties. That the parties contracted to have all disputes resolved pursuant to arbitration does not preclude the Court from exercising its rightful jurisdiction in granting a preliminary injunction to maintain the status quo pending the outcome of arbitration."

Motion, Exh. F, at p.2, n.1.

In addition to expressly stating that the Preliminary Injunction was not a final, enforceable judgment, the District Court also appeared to have relied on the fact that pursuant to terms of the Franchise Agreement the parties agreed that equitable relief would be available as a remedy to any breach of the agreement. In the Reconsideration Order, the Court specifically observed "the parties [sic] contract expressly authorizes injunctive relief in the event of a breach." Motion, Exh. F, at p.2, n.1.[3] This finding was consistent with the terms of the Court's Preliminary Order whereby it noted that the Debtor "agreed that any violation of the noncompete provision and the confidentiality provisions would cause MarbleLife to 'suffer irreparable harm' and that MarbleLife could seek 'damages or injunctive relief against Franchisee in a court of competent jurisdiction' to address said harm." Motion, Exh. A, at p.3.

On February 16, 2011 (the "Petition Date"), shortly after the Reconsideration Order was issued, the Debtor filed its Chapter 11 petition. As a result of the Debtor's filing for chapter 11 relief, the District Court Litigation was placed in civil suspense. Seven (7) days later, the Movant filed a motion requesting that this Court, on an expedited basis, issue an order dismissing the Debtor's bankruptcy petition or, in the alternative, granting the Movant relief from the automatic stay to enforce the Preliminary Injunction [Docket No. 13] (the "Motion"). The Movant requested that the Debtor's Petition be dismissed for cause, including, bad faith pursuant to § 1112(b) and, in the alternative, requested relief from the automatic stay pursuant to § 362(d)(1) for lack of adequate protection.

The Debtor filed a response to the Motion [Docket No. 20] (the "Response"). The Debtor opposed the Motion on several bases including that (1) the Debtor's chapter 11 case has a legitimate business reorganization purpose, (2) the filing is not a single creditor bankruptcy case, (3) Movant has a claim that can be addressed in the bankruptcy, and (4) cause does not exist to allow enforcement of the Preliminary Injunction. Response ¶¶ 30, 32, 42, & 55.

On March 2, 2011, this Court held an evidentiary hearing to address the issues raised by the

---

[3] This Court notes that the Franchise Agreement also expressly authorizes money damages. Section 9.3 of the Franchise Agreement reads in relevant part: "if the Franchisee fails to comply strictly with any such covenants, MarbleLife will suffer irreparable harm and will have a cause of action for damages or injunctive relief or both against Franchisee in a court of competent jurisdiction." Motion, Exh. B, at p.22.

3

Motion (the "Hearing").[4] At the Hearing, the Movant did not call any witness in support of its Motion. Instead, the Movant relied upon its Motion, certain documents including the Orders issued by the District Court in the District Court Litigation, and argument of its counsel.

The Debtor presented testimony from several witnesses. The Court heard testimony from two witnesses, Joseph Smith and Richard Ritaco. Joseph Smith, the Debtor's sole shareholder[5] testified on behalf of the Debtor. Smith testified that the Debtor filed bankruptcy because it was in financial distress as a result of the Preliminary Injunction. First, the Debtor did not have sufficient income to fund an appeal from the Preliminary Objections or pursue the Texas arbitration. Second, the Preliminary Injunction prevented the Debtor's continued operations. The Debtor had ceased its business operations and laid off its staff of twelve employees each of whom were collecting unemployment insurance. Third, Movant had filed a motion in the District Court Litigating seeking a judgment in the amount of $400,000 for attorney fees, statutory costs, and expenses.

Smith further testified that prior to ceasing business operations, the Debtor was servicing several maintenance contracts with various property management companies in the City of Philadelphia. In addition to servicing its executory contracts, the Debtor owns and operates a fleet of leased vehicles that are stored at a facility located at 60 Old State Road, Media, Pennsylvania, a property that is also leased by the Debtor. The Debtor's offices are located at this facility. The Debtor has a loan facility provided by Sovereign Bank with a present balance of approximately $87,500.00 (the "Sovereign Bank Loan"). Because the Debtor is no longer able to operate, the Debtor is no longer able to make payments on the Sovereign Bank Loan or to any of its other creditors.

Mr. Smith testified that in providing its services, the Debtor is using nonproprietary techniques.

---

[4] On February 22, 2011, the Debtor filed an adversary complaint, Adv. No. 11-00207, against the Movant seeking a declaratory judgment with regard to the enforceability of the noncompetition covenant contained in the Franchise Agreement (the "Adversary Proceeding"). Simultaneous with the filing of the adversary complaint, the Debtor also filed an expedited motion for declaratory relief (the "Expedited Motion"). At the Hearing, this Court was scheduled to also address the Expedited Motion. Movant opposed the Court's consideration of the adversary complaint on an expedited basis and requested an opportunity to conduct discovery. However, at the Hearing, Debtor's counsel, in response to an inquiry from the court, acknowledged that the Expedited Motion could be rendered moot if this Court denied the Motion filed by the Movant in the main bankruptcy case.

[5] At the Hearing, the Movant attempted to introduce the entire transcript of Mr. Smith's deposition taken in connection with the District Court proceedings. Because of Mr. Smith's availability, this Court permitted the Movant to use the deposition for impeachment purposes and reserved its decision on whether to admit the entirety of the transcript. Tr. 35:4-36:13. The Movant never returned to the issue and as a result this Court never decided whether the entirety of the transcript was admissible.

He also testified that if the Debtor was permitted to continue its business operations as a debtor-in-possession, the Debtor would not be required to use any of the Movant's intellectual property. He explained that at least 15 other companies in the Debtor's geographic region restore and maintain marble, granite, terrazzo and concrete, none of whom rely on MarbleLife's techniques or processes. Moreover, Mr. Smith testified that if the Debtor is permitted to operate, the Debtor would have the resources necessary to fund its reorganization, including the payment of any claim held by the Movant arising from the enforcement of the Franchise Agreement's non-compete provisions.

Mr. Ritacco, the Debtor's second witness to testify, is the publisher of Distinctive Living Magazine, a magazine from which the Debtor had prior to the issuance of the Preliminary Injunction purchased advertising. Mr. Ritacco testified that his company was and will be negatively impacted as a result of the Debtor's ceasing its business operations as a result of the Preliminary Injunction.

The parties stipulated to the admission of testimony from two other witnesses, Don Haas and Pat Keavney. With regard to the testimony of Don Haas, the parties stipulated to the following: (1) Mr. Haas is the property manager of a building located at Three Logan Square; (2) the Debtor has an executory contract to provide maintenance at that building; and (3) that Mr. Haas intends to retain the services of the Debtor if the Debtor is permitted to operate postpetition.

With regard to the testimony of Mr. Keavney, the parties stipulated to the following: (1) Mr. Keavney is the property manager of a building located at One Logan Square; (2) the Debtor has an executory contract to provide maintenance at that building; and (3) that Mr. Keavney intends to retain the services of the Debtor if the Debtor is permitted to operate postpetition. Both witnesses indicated that the parties' stipulations adequately represented their testimony.

## LEGAL DISCUSSION

The Motion seeks to dismiss the Debtor's petition pursuant to § 1112(b) on the basis that the Debtor's petition was filed in bad faith. In the alternative, the Motion seeks relief from the automatic stay pursuant to § 362(d)(1) to enforce the Preliminary Injunction. As cause for relief, the Movant reiterates its claim of bad faith and, in the alternative, claims that the District Court's finding of irreparable harm

5

establishes, as a matter of law, that its interest in the covenant not to compete is not adequately protected. This Court will consider each argument in turn.

### A. The Movant's Request for Dismissal of the Debtor's Petition

In its Motion, the Movant argues that the Debtor's chapter 11 petition was filed in bad faith as a litigation tactic and therefore should be dismissed pursuant to § 1112(b) of the Bankruptcy Code. The Movant relies on two facts as evidence of the Debtor's bad faith: (1) the Debtor's decision to initiate this bankruptcy proceeding two days after the District Court filed the Reconsideration Order; and (2) the Debtor's inability to reorganize.[6] In response, the Debtor argues that the Movant's interest in the enforcement of the covenant not to compete gives rise to a right of payment and therefore must be deemed a claim that may be adjudicated in connection with the Debtor's bankruptcy case. Debtor countered that its bankruptcy case is not a two-party dispute because of the existence of other creditors who, as a result of the Debtor's inability to operate, will not be paid.

Bad faith is a factor that justifies dismissal under § 1112(b). *See Argus Group 1700, Inc. v. Steinman*, 206 B.R. 757, 764-65 (E.D.Pa.1997). The existence of bad faith is a question of fact that turns on this Court's evaluation of the totality of the circumstances. *See In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (holding that bankruptcy court did not abuse discretion by finding debtor's petition was filed in bad faith); *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004); *In re SB Properties, Inc.*, 185 B.R. 198, 204 (E.D.Pa.1995) (holding that chapter 11 debtor's filing was motivated only to forestall forced real estate sale). This Court's inquiry must consider the Debtor's conduct in the context of all of its creditors to determine its motive for filing for bankruptcy. *See In re Myers*, 491 F.3d 120, 125-26 (3d Cir. 2007).

Contrary to the Movant's argument, the fact that the Debtor filed for chapter 11 relief two days after the filing of the Reconsideration Order does not indicate, in and of itself, that the Debtor has acted in

---

[6] This Court notes that by citing the Debtor's "inability to reorganize" as evidence of the Debtor's bad faith, the Movant is putting its cart before its horse. By claiming that the Debtor is unable to reorganize, the Movant is assuming what it needs to prove, *i.e.* whether it is entitled to enforce the Preliminary Injunction. Because this Court finds that the Movant has not demonstrated cause to lift the automatic stay to permit enforcement of the Preliminary Injunction, the Movant's assumption that the Debtor is unable to organize is without basis.

bad faith. As the Third Circuit has recognized, adverse litigation that places the debtor in financial distress constitutes a legitimate reason for filing bankruptcy. *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999). As explained by the Third Circuit in SGL Carbon:

> "We do not hold that a company cannot file a valid Chapter 11 petition until after a massive judgment has been entered against it. Courts have allowed companies to seek the protections of bankruptcy when faced with pending litigation that posed a serious threat to the companies' long term viability. In those cases, however, debtors experienced serious financial and/or managerial difficulties at the time of filing."

*In re SGL Carbon Corp.*, 200 F.3d 154, 164 (3d Cir. 1999). To support an inference of bad faith, this Court must in addition find that the Debtor otherwise lacks a reorganizational purpose. *See, e.g., In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (stating that a court's inquiry should be directed to the debtor's overarching motive in filing for bankruptcy); *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994).

In no sense may the Debtor be considered a financially healthy debtor. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004) (recognizing "good faith necessarily requires some degree of financial distress on the part of a debtor"). Mr. Smith testified that once the Preliminary Injunction was entered, the Debtor ceased to have the means to fund its obligations. The Debtor has several other creditors who will be adversely affected by the Debtor's inability to operate its business - including, *inter alia*, the landlord of the property located at 60 Old State Road, Sovereign Bank, the Debtor's trade vendors, the holders of loans on the Debtor's vehicle fleet, and the Debtor's employees.[7] By filing for bankruptcy, the Debtor was attempting to preserve its value as a going concern that would in turn maximize the value of the bankruptcy estate. This purpose is consistent with a finding that the Debtor has acted in good faith. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 120 (3d Cir. 2004). The Debtor believes and has presented evidence that supports a finding that if granted the opportunity to reorganize, the Debtor will have sufficient resources to formulate and to present a viable plan of reorganization. Because this Court finds that the Debtor was in financial distress when it filed for chapter 11 relief and that the Debtor's petition will preserve the Debtor as a going concern that will in turn

---

[7] This Court notes that the interests of the Debtor's other creditors also weigh against a finding that the Debtor's bankruptcy is essentially a two-party dispute.

maximize the value of the Debtor's estate, this Court cannot infer that the Debtor acted in bad faith.

In addition to arguing that its financial condition negates the inference that its bankruptcy constitutes a two-party dispute, the Debtor argued in its Response and at the Hearing that the Movant's interest in the enforceability of the covenant not to compete may be monetized thereby rendering it subject to the claims resolution process. *See, e.g., In re Ben Franklin Hotel Assoc.*, 186 F.3d 301, 205 (3d Cir. 1999). Significantly, the Movant did not raise the issue of whether its interest in the enforcement of the covenant not to compete constitutes a claim pursuant to 11 U.S.C. § 101(5). Rather, the issue was raised by the Debtor in response to the Movant's allegation of bad faith. The Debtor argues that the Movant's interest may be valued by granting the Movant a claim equal to two years of royalty payments based upon the Debtor's gross revenues consistent with the terms of the Franchise Agreement. Because the Movant did not raise this issue as a ground for relief pursuant to either § 1112(b) or § 362(d), this Court will refrain from determining whether money damages are a viable alternative to the equitable enforcement of Movant's interest. *See Scully v. U.S. WATS, Inc.*, 238 F.3d 497 (3d Cir. 2001) ("a judgment can usually only be based on grounds raised by the parties.").

### B. The Movant's Request for Relief From the Automatic Stay

By filing its petition, the Debtor stayed the continuation of the District Court Litigation as well as the enforcement of the Preliminary Injunction. "Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991). The Movant seeks relief from the automatic stay to enforce the Preliminary Injunction pursuant to § 362(d)(1). To establish cause, the Movant cites two grounds. First, the Movant claims that its interest in property cannot be adequately protected. Second, the Movant claims that the Debtor acted in bad faith by filing for chapter 11 relief. Because this Court has already rejected the Movant's bad faith arguments, this Court will limit its consideration to whether cause exists due to the inability of the Debtor to adequately protect the Movant's property interest.

### 1. *Adequate Protection*

Although a debtor bears the ultimate burden of proof as to whether a party's interest is adequately protected, *In re Swedeland Development Group, Inc.*, 16 F.3d 552 (3d Cir. 1994), "every party seeking relief from the automatic stay under § 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof." *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (discussing a movant's initial burden under § 362(d)(1)); *see also In re Reice*, 88 B.R. 676, 680 (Bankr. E.D. Pa. 1988) ("a prima facie case requires that movant make a 'substantive showing of cause.'"). To meet its burden, a party seeking relief for lack of adequate protection must at the very least demonstrate that it possesses an interest in property and that the value of its interest is declining as a result of the continued operation of the automatic stay. *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994); *In re Reice*, 88 B.R. 676, 684 (Bankr. E.D. Pa. 1988) (finding that movant had "failed to make even a *de minimis* showing on this point"). Typically, a party establishes that it lacks adequate protection by showing that the value of is property is declining or threatening to decline. *See In re Rosen*, 208 B.R. 345, 356 (D.N.J. 1997).

Here, the Movant has made no showing establishing its interest or that the value of its interest is declining. Rather, the Movant argues that the District Court's finding of irreparable harm as a matter of law requires this Court to find that the Movant's interest is not adequately protected. While a bankruptcy court is obligated to "give collateral estoppel effect to those elements of the claim that are identical to the elements ... and which were actually litigated and determined in the prior action," *Grogan v. Garner*, 498 U.S. 279, 284 (1991), the Movant has failed to explain how the elements of its present claim for relief from the automatic stay and specifically the issue of whether it is adequately protected are identical to the matters that were litigated, including the issue of irreparable harm, in the District Court Litigation. Significantly, the Preliminary Injunction did not even establish for claim preclusion purposes that the Movant possesses an interest in property. As stated by the District Court in its Reconsideration Order:

9

> "The Court's grant of preliminary injunction did not make a final enforceable ruling with regards to the parties [sic] rights or obligations under the contract. The Court is well aware that there is a pending arbitration proceeding in Texas which will decide the substantive rights of both parties."

Motion, Exh. F, at p.2, n.1.

Even assuming that the Movant has carried its initial burden with regard to establishing an interest in property, the Movant has presented no evidence with regard to whether the value of its interest is declining. The Movant cites no authority for the proposition that a judgment creditor requesting relief to enforce a judgment in a subsequent bankruptcy proceeding may establish that it lacks adequate protection by relying on a prior finding of irreparable harm. Because this Court is not required to give any more than "passing consideration to an argument that is devoid of any legal support," *In re Aldan Industries, Inc.*, Bky. No. 00-10360, 2000 WL 357719, at *5 (Bankr. E.D. Pa. Apr. 3, 2000), this Court will refrain from attempting to determine on its own initiative whether as a matter of law a lack of adequate protection may be inferred from a prior finding of irreparable harm. As such, this Court cannot find that the Movant has met its initial burden.

Ultimately, this Court believes that the rubric of adequate protection is inapplicable to its consideration of whether the Movant is entitled to relief from the automatic stay to enforce the Preliminary Injunction. *See, e.g., In re Reice*, 88 B.R. 676 (Bankr. E.D. Pa. 1988) ("the goal of 'adequate protection' is to protect against a decrease in value which directly offsets the *secured* party's interests in the collateral.") (emphasis added). To the extent the District Court's finding of irreparable harm is relevant to the matters raised by the Motion, this Court finds that the issue of irreparable harm is relevant of whether money damages are a "viable alternative" to the equitable remedy imposed by the Preliminary Injunction. *See, e.g., In re Ben Franklin Hotel Assoc.*, 186 F.3d 301, 205 (3d Cir. 1999). However, the Movant did not raise this issue as a ground for relief. *See Scully v. U.S. WATS, Inc.*, 238 F.3d 497 (3d Cir. 2001) ("a judgment can usually only be based on grounds raised by the parties."). As stated above, this Court will not address it.

Because the Franchise Agreement terminated prepetition, the only basis for the Movant's present

10

interest is the covenant not to compete. In the context of bankruptcy proceedings, whether the automatic stay applies to an action seeking the enforcement of an injunction relating to a covenant not to compete typically arises in the context of whether a party's interest in the covenant constitutes a "claim" pursuant to 11 U.S.C. § 101(5)(B). *See, e.g., Matter of Udell*, 18 F.3d 403, 410 (7th Cir. 1994) (addressing whether relief from stay was warranted to permit non-bankruptcy litigation relating to enforcement of covenant not to compete to continue); *In re Kilpatrick*, 160 B.R. 560 (Bankr. E.D. Mich. 1993) (addressing whether "rights under the breached [non-compete] covenant constitute a claim for Code purposes"); *Petro Franchise Systems, LLC v. All American Properties, Inc., (In re All American Properties, Inc.)*, Bky. No. 10-00273, 2010 WL 1541694 (Bankr. M.D. Pa. Apr. 15, 2010) (applying same test as court in *Udell*).[8]

Even if the Movant had premised its request for relief from the automatic stay on the issue of whether money damages are a "viable alternative" to the equitable remedy imposed by the Preliminary Injunction, this Court finds that the issue is not determinative of whether relief from stay is warranted. As explained by the Seventh Circuit in *Udell*:

> "The automatic stay prescribed by the Bankruptcy Code applies to 'judgment[s] obtained before the commencement of the case under this title,' 11 U.S.C. § 362(a)(2), whether or not the judgment arises out of a 'claim.' Though the bankruptcy court correctly held that [the Movant's] right to an injunction is not a claim, the court was required to also consider (1) the prejudice to the debtor or the bankruptcy estate from allowing the non-bankruptcy litigation to continue; (2) the relative hardship to the debtor and to the party seeking relief; and (3) the creditor's probability of prevailing on the merits in the litigation, before it could lift the automatic stay."

*Matter of Udell*, 18 F.3d 403, 410 (7th Cir. 1994) (remanding to the district court for a determination of whether the bankruptcy court abused its discretion by granting relief from the automatic stay); *see also Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001) (holding that an injunction that issued to prevent further violation of covenant not to compete was not a "claim" and consequently could

---

[8] The Third Circuit Court of Appeals has stated that an equitable remedy will give rise to a payment and, therefore, be deemed a claim when the payment of monetary damages is a "viable alternative" to an equitable remedy. *In re Ben Franklin Hotel Assoc.*, 186 F.3d 301, 306 (3d Cir. 1999). Conversely, if monetary damages are not a viable alternative to the enforcement of the covenant not to compete, the Movant's interest does not constitute a claim and the automatic stay would not apply to the enforcement of the Preliminary Injunction. *See Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001) (holding that an injunction that issued to prevent further violation of covenant not to compete was not a "claim" and consequently could not be discharged in bankruptcy).

not be discharged in bankruptcy); *Petro Franchise Systems, LLC v. All American Properties, Inc., (In re All American Properties, Inc.)*, Bky. No. 10-00273, 2010 WL 1541694, at *2 (Bankr. M.D. Pa. Apr. 15, 2010) (applying same test as court in *Udell*); *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (same). Accordingly, this Court will rely upon the test enunciated by *Udell* and relied upon by Judge France in *Petro Franchise Systems* to determine whether cause exists to grant the Movant relief from the automatic stay to enforce the Preliminary Injunction.

### 2. *Relief from the Automatic Stay to Enforce a Prior Order*

In *Petro Franchise Systems*, Judge France recognized "[s]everal courts in this circuit have relied upon a three-pronged test to determine whether cause exists for granting relief from the automatic stay to continue litigation in another forum." *Petro Franchise Systems, LLC v. All American Properties, Inc., (In re All American Properties, Inc.)*, Bky. No. 10-00273, 2010 WL 1541694, at *2 (Bankr. M.D. Pa. Apr. 15, 2010). Rather than attempt to navigate uncharted legal waters, this Court will endeavor to determine whether pursuant to the three factors identified by Judge France the Movant's request for relief from the automatic stay for cause has any merit. The three factors are: "(1) whether the debtor or the estate will be greatly prejudiced by continuation of the litigation in the other forum; (2) whether the hardship to the non-debtor party outweighs the hardship to the debtor; and (3) whether probability of prevailing on the merits favors the non-debtor." *Id.*

#### a. <u>Prejudice Resulting from the Continuance of the District Court Litigation</u>

In considering the first factor, this Court must not just consider the interests of the Debtor. This Court must also consider whether interests of the Debtor's estate - which includes, *inter alia*, the interest of Sovereign Bank, the Debtor's landlord, the Debtor's suppliers, the Debtor's customers and the Debtor's employees – will be prejudiced if the litigation is permitted to continue in another forum. *See, e.g., In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (finding "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"). If the stay is lifted and Movant is permitted to continue with the District Court Litigation, the Debtor will not only be unable to resume business operations, it will be

forced to incur substantial costs associated with litigating the arbitration proceeding. Not only will that result eliminate any value of the Debtor as a going concern, funding the litigation will deplete the Debtor's estate of any residual assets. Finally, the Debtors principal place of business is located in this forum and all of the facts relating to this dispute occurred here. For these reasons, this Court finds that the first factor weighs heavily in favor of the Debtor. Because the arbitration proceedings have not yet begun, concerns of judicial economy are not implicated.

### b. **Balance of Hardships**

This Court also finds that the second factor weighs in favor of the Debtor.[9] Although the Preliminary Order includes a finding by the District Court that the Debtor's continued operation will cause the Movant irreparable harm, the District Court's decision did not balance the harms to the Debtor's estate that includes not just the Debtor's interests but also the interests of its creditors, against the harms to the Movant. Because the harm to the Debtor's estate was not considered by the District Court, this Court finds that the Movant has failed to meet its burden of proving the applicability of the findings of the Preliminary Injunction to the issues implicated by the Movant's request for relief from the automatic stay. *See, e.g., Greenway Center, Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007) (acknowledging that for issue preclusion to apply Pennsylvania law requires an "identity of the issues"). As a result, this Court finds that the Preliminary Injunction is not determinative of the balance of harms between the Debtor's estate and the Movant.

Further, if relief is granted, the Debtor will cease operations leaving little or no assets available to fund the Debtor's estate. On the other hand, the Movant has failed to demonstrate what harm it will suffer if it is denied relief from the automatic stay. The covenant not to compete bars the Debtor from competing against the Movant for a period of two years after the termination of the Franchise Agreement. As evidenced by the fact that at present at least 15 other companies now compete with a potential

---

[9] This Court notes that the transcript of the Hearing indicates that this Court stated in its bench ruling that "it is my opinion that the hardship to the debtor is greatly outweighed by the hardship to the nondebtor." Tr., 149:2-4. To the extent that the transcript is a correct representation of this Court's bench ruling, this Court acknowledges that it misspoke and that this Court should have stated that the hardship to the nondebtor is greatly outweighed by the hardship to the debtor.

franchisee of the Movant, the Debtor's continued operation should not have a material impact on the ability of the Movant to secure a replacement franchisee. The Debtor has provided evidence corroborated by its customers that it may continue operations without making use of the Movant's intellectual property. Moreover, to the extent that the Debtor's continued operation does violate the terms of the covenant not to compete, this Court sees no reason why the Movant, like any other judgment creditor, cannot be made whole through the claims process. *See* 11 U.S.C. § 502(c); J. Sharer, *Noncompetition Agreements in Bankruptcy: Covenants (Maybe) Not to Compete*, 62 U. Chi. L. Rev. 1549, 1558 (1995). As a result, this Court finds that the second factor also weighs in favor of denying the Movant relief.

    c.    **Probability of Success on the Merits**

As for the final factor, although the enforceability of the covenant not to compete was to be determined in the arbitration, this Court finds that the issuance of the Preliminary Injunction in the District Court Litigation is persuasive. As a result, this factor weighs in favor of the Movant.

Finding that two of the three factors weigh against the Movant, this Court finds that it is inappropriate to grant relief from the automatic stay to permit the Movant to enforce the Preliminary Injunction.

### C.    SUMMARY

After trial of the matter and consideration of all of the evidence presented by the parties, the Court denies the Motion. This Court finds that the Movant has failed to meet its burden under either § 1112(b) or § 362(d)(1).

BY THE COURT:

*/s/ Magdeline D. Coleman*
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED: MARCH 28, 2011